IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MAURICE W.,[1]

    Plaintiff,

vs.            Case No. 18-1256-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

**MEMORANDUM AND ORDER**

  On March 13, 2015, plaintiff filed an application for social security disability insurance benefits. Plaintiff alleged a disability onset date of July 6, 2012. The application was denied initially and on reconsideration. An administrative hearing was conducted on May 16, 2017. The administrative law judge (ALJ) considered the evidence and decided on September 8, 2017 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

  To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

---

[1] The initial is used to protect privacy interests.

1

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010)(internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice

between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. THE ALJ'S DECISION (Tr. 13-29).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 14-15). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through March 31, 2018. Second, plaintiff has not engaged in substantial gainful activity since July 6, 2012. Third, plaintiff has the following severe impairments: anxiety; post-traumatic stress disorder (PTSD); adjustment disorder; paranoid personality disorder traits; and obsessive-compulsive disorder (OCD). Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: plaintiff is limited to simple, routine, repetitive tasks with occasional interaction with coworkers and no interaction with the general public, but plaintiff retains the ability to accept supervision on a basic level. Finally, the ALJ

4

determined that, although plaintiff cannot perform any past relevant work, he could perform such jobs as laboratory equipment cleaner, order filler, and laundry worker. The ALJ further found that these jobs exist in significant numbers in the national and state economy.

III. TREATING SOURCE OPINIONS

Plaintiff's claim for benefits is based upon his mental health and his irritable bowel syndrome (IBS) which seems connected to his mental health. Plaintiff alleges that the mental or emotional stress of work causes his IBS symptoms and that his IBS symptoms exacerbate the mental or emotional stress of work. The record contains opinions from treating sources who discuss the functional limitations caused by plaintiff's IBS. The ALJ mostly agreed with the psychological diagnoses of these sources, but he disagreed with their conclusions regarding the work limitations caused by plaintiff's IBS and mental health conditions. In fact, the ALJ concluded, based upon his review of the medical evidence, that IBS was not a severe impairment for plaintiff and he referenced this conclusion in giving only partial weight to the treating sources' opinions. Plaintiff contends that this conclusion is not supported by substantial evidence.

A. <u>IBS as a severe impairment</u>

Plaintiff's first argument to reverse the decision to deny benefits concerns the ALJ's analysis of two treating sources: Dr.

5

Elizabeth Hatcher, plaintiff's treating psychiatrist, and Tyrus Petty, plaintiff's therapist. Part of the ALJ's critique of their opinions was based upon his determination that plaintiff's alleged IBS was not a severe impairment. Plaintiff contends that this conclusion is not supported by substantial evidence.

Plaintiff asserts that the ALJ's analysis of the evidence ignores the interplay between plaintiff's mental or emotional status and his IBS symptoms, i.e., that job stress or anxiety cause his IBS symptoms and his IBS symptoms cause plaintiff job stress and anxiety, and that the combination creates a severe work impairment. Instead of ignoring this possibility, the ALJ's decision addresses it as follows:

> The . . . evidence supports a finding that the claimant did not suffer from any severe physical impairments. Even if the undersigned found the claimant's alleged IBS to be severe, there is no objective evidence that it gave rise to debilitating limitations, either singly or in combination with the mental health impairments.

(Tr. 17). Before stating this conclusion, the ALJ reviewed the findings contained in numerous medical records and noted plaintiff's testimony that plaintiff does not take medication for IBS and that, after plaintiff stopped working, his IBS symptoms did not improve. (Tr. 16).

So, the court rejects the claim that the ALJ did not consider the combination or interplay of mental and physical impairments in his analysis. The ALJ concluded that he would reject plaintiff's

6

claim for benefits even if he had found that plaintiff's IBS was a "severe" physical impairment. And, as discussed below, the court finds that the ALJ reasonably discounted treating source opinions of plaintiff's functional limitations based upon his consideration of the record, including the severity of plaintiff's IBS symptoms.

B. Standards for considering treating source opinions

In considering a treating physician's opinion, an ALJ must either give it controlling weight or "'articulate[] specific, legitimate reasons for his decision, finding, for example, the opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence in the record.'" Arterberry v. Berryhill, 743 Fed.Appx. 227, 229 (10th Cir. 2018)(quoting Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009)). The ALJ must consider other factors including: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship, including the treatment provided and the kind of examination and testing performed; whether the physician is a specialist in the area upon which an opinion is rendered; and other factors brought to the ALJ's attention that may support or contradict the opinion. 20 C.F.R. § 404.1527. But, the ALJ's decision need not include an explicit discussion of each factor. Oldham, 509 F.3d at 1258.

C. Dr. Hatcher

Dr. Hatcher completed two medical source statements. In a statement dated January 6, 2016 (Tr. 999-1000), she opined that plaintiff was moderately limited in his ability: to understand and remember detailed instructions*; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain attendance, and be punctual**; to work in coordination with or proximity to others without being distracted by them; to make simple work related decisions*; to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods**; to interact appropriately with the general public**; to respond appropriately to changes in the work setting*; to travel in unfamiliar places or use public transportation*; and to set realistic goals or make plans independently*. She found that plaintiff was markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors; and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

Dr. Hatcher's statement dated March 28, 2017 (Tr. 1058-1059) was somewhat different. In the areas marked with an asterisk above, plaintiff was not listed as moderately limited. In the areas marked with two asterisks, plaintiff was listed as markedly

8

limited, at least on bad days. Plaintiff's rating remained moderately or markedly limited in those areas not marked with an asterisk. Plaintiff's ability to carry out detailed instructions and to sustain an ordinary routine without special supervision were listed as moderately to markedly limited, although they were rated as only mildly limited on the January 6, 2016 form.

Both statements from Dr. Hatcher estimated that plaintiff would miss work or leave prematurely at least four days per month. (Tr. 999, 1058).

The ALJ reviewed the notes of plaintiff's examinations by Dr. Hatcher and concluded they showed "no significant abnormalities, other than a tendency to 'meander' over many topics." (Tr. 20). He said the examinations showed: full orientation; intact reality; alertness; ability to follow conversations; ability to engage in abstraction; articulate speech; loquacious language; an animated mood/affect; intact memory; pleasant demeanor; and intact attention. Id. The ALJ found that the reports of these examinations and his review of Dr. Hatcher's treatment notes, were inconsistent with Dr. Hatcher's medical source statements and therefore, gave the statements only "some weight."

Plaintiff contends that the ALJ's analysis ignores that a visit to Dr. Hatcher might not produce the kind of work stress that plaintiff alleges exacerbated his symptoms. But, plaintiff has testified that his IBS symptoms are no better since he has

9

stopped working. (Tr. 49). This is a "weight of the evidence" issue which the ALJ has the discretion to decide.

The ALJ further noted that, while Dr. Hatcher's mental status examinations were consistent with the consultative examination and conclusions of Dr. Melvin Berg (a consultative examining source), the extreme limitations in Dr. Hatcher's medical source statements were inconsistent with Dr. Berg's report. (Tr. 21). During his visit with plaintiff, Dr. Berg found that plaintiff was outgoing, friendly and lively, and also extremely tense, and nervous and jittery. (Tr. 868). Dr. Berg observed that plaintiff lived alone independently; demonstrated average to superior intellectual ability; logical, coherent, reality-based thinking; good concentration; and adequate memory function. (Tr. 868-870). He found that plaintiff socializes with his parents and church members. (Tr. 869). He determined that plaintiff is able to process simple information, retain and execute simple instructions, persist at simple tasks, and learn and retain new information. Id. at 870. He also found that plaintiff is:

> inconsistent in his ability to accommodate to the demands of superficial interpersonal interaction. That is, he can present himself in a very effective manner, as during the consultation and probably in other superficial contacts. However, he does have a history of extremely distressing experiences in which he feels harassed and then experiences anxiety triggering physical distress. He has had a series of instances in which work became intolerable and he experienced the environment as "toxic."

10

Id.

Plaintiff argues that Dr. Berg's report is consistent with Dr. Hatcher's "opinion." Doc. No. 11, p. 19. The ALJ did find consistencies between Dr. Berg's report and Dr. Hatcher's examination findings. (Tr. 22). But, the ALJ was reasonable in concluding that Dr. Berg's report was inconsistent with the "extreme limitations" noted in Dr. Hatcher's medical source statements. (Tr. 21).

The ALJ also commented that notes from Dr. Michael Engelken, a personal physician and treating source, indicated that plaintiff "exhibited no psychiatric abnormalities, with an appropriate and pleasant demeanor, good eye contact, no overt signs of anxiety or depression, and normal speech." (Tr. 17).

The ALJ discounted Dr. Hatcher's assessments, in addition, because they relied "substantially" upon plaintiff's own self-reports. (Tr. 21). Plaintiff contends that the ALJ was being overly speculative and that, in any event, Dr. Hatcher was within her right to rely upon the subjective and objective symptoms she deemed credible.

This is not a persuasive argument to overturn the decision to deny benefits. An ALJ may legitimately consider whether a treating source's opinion relied upon subjective self-reports. See Hackett v. Barnhart, 395 F.3d 1168, 1174 (10th Cir. 2005); Boss v. Barnhart, 67 Fed.Appx. 539, 542 (10th Cir. 2003). Here, the issue centers

upon the treating sources' opinions as to the degree plaintiff's IBS symptoms interfere with his functional capacity, because the ALJ more or less agreed with the treating sources' mental diagnoses. It does not appear overly speculative in this instance for the ALJ to assert that the treating sources relied upon plaintiff's self-reports for their evaluations of plaintiff's functional limitations. The court acknowledges that mental health diagnosis may require reliance upon a patient's subjective statements. Thomas v. Barnhart, 147 Fed.Appx. 755, 759-60 (10th Cir. 2005); Miranda v. Barnhart, 205 Fed.Appx. 638, 641 (10th Cir. 2005). The ALJ, however, was not critical of the treating sources' mental health diagnoses. He was critical and gave only "some weight" to Dr. Hatcher's assessment of plaintiff's functional limitations. While a different result could be reasonable, the court finds that the ALJ's opinion followed a reasonable approach in weighing Dr. Hatcher's reports.

    D. Tyrus Petty

On June 8, 2015, Mr. Tyrus Petty, LSCSW, submitted a report answering questions regarding plaintiff. (Tr. 961-967). The report indicates that Petty was plaintiff's therapist for three and one-half years beginning in December 2010, while plaintiff was working at a public library. Mr. Petty opines that plaintiff's situation with IBS has worsened so that plaintiff cannot rely upon a symptom-free time or environment. He describes plaintiff's case

12

as involving the interaction of IBS and mental disorders in a manner that has created a "toxic closed loop phenomenon." (Tr. 967). "The IBS attacks cause a severe spike in his mental and emotional state. In turn, an increase in his anxiety will directly ignite an IBS response." Id. He noted that in the last two years of therapy, there were only six sessions that were not interrupted by symptoms. Mr. Petty described plaintiff as hypervigilant and distrustful, suspicious of his peers, and prone to flashbacks of prior traumatic job events. He believes plaintiff suffers from PTSD and that one of plaintiff's PTSD symptoms is IBS. Mr. Petty described plaintiff's job history as including numerous jobs over a short span of time in Chicago before he moved to Topeka in August 2005 where plaintiff's parents live. Plaintiff held a job at the public library from 2006 into 2012 and received mainly positive evaluations in spite of interruptions caused by IBS. He described plaintiff as having fear and apprehension regarding the most innocuous tasks, as having difficulty concentrating because of stressful flashbacks, and as feeling betrayed by supervisors who did not accommodate his IBS symptoms. Mr. Petty opined that the primary cause of plaintiff's loss of the library job was IBS, and that he has a slim-to-none chance of maintaining a job unless his anxiety and PTSD are significantly lowered.

The ALJ gave Mr. Petty's opinion "partial weight." (Tr. 22). He discounted the opinion to the extent it was inconsistent with

13

the medical evidence from physical examinations (which are summarized at Tr. 16, 17 and 23) and relied substantially or overwhelmingly on the claimant's subjective allegations.[2] Thus, the ALJ used similar rationale to discount Mr. Petty's opinion as he used to discount Dr. Hatcher's opinion. The ALJ also found that employment was available which would isolate plaintiff from his peers to avoid stress.

As additional support for his decision, the ALJ discussed the breadth of plaintiff's activities of daily living and the reports of three non-examining, non-treating consultants. (Tr. 23-24). Two of the consultants considered plaintiff's mental health symptoms; one considered plaintiff's physical symptoms.

The court finds that the ALJ pointed to sufficient evidence and argumentation to support his evaluation of Mr. Petty's opinion, Dr. Hatcher's opinion, and the ALJ's determination of plaintiff's RFC. The ALJ's decision may not be the only reasonable opinion which may be drawn from the record, but it is a reasonable opinion.

IV. DR. BERG'S OPINION VIS-À-VIS PLAINTIFF'S RFC.

Plaintiff's last argument is that the ALJ erred when he gave Dr. Berg's opinion "significant weight" (Tr. 22), but failed to

---

[2] Obviously, Mr. Petty's account of the interruptions to plaintiff's therapy sessions would not be an instance of relying upon plaintiff's subjective accounts. Nor would Dr. Hatcher's account of plaintiff belching or being hyper-vigilant. But, these are matters the ALJ was entitled to weigh along with the other evidence to determine the extent of plaintiff's functional limitations.

include the limitations suggested in that opinion in his determination of plaintiff's RFC.

To reiterate, the RFC formulated by the ALJ limits plaintiff to simple, routine, repetitive tasks with occasional interaction with coworkers and no interaction with the general public, but plaintiff retains the ability to accept supervision on a basic level. (Tr. 19). Dr. Berg stated that plaintiff "is inconsistent in his ability to accommodate to the demands of superficial interpersonal interaction," although "he can present himself in a very effective manner, as during the consultation and probably in other superficial contacts." (Tr. 870).

The court disagrees with plaintiff's argument for the following reasons. First, the ALJ gave Dr. Berg's opinion "significant weight." He did not declare he was adopting its conclusions verbatim; nor was he required to do so. See Chapo v. Astrue, 682 F.3d 1285, 1288-89 (10th Cir. 2012)(there is no requirement for direct correspondence between an RFC finding and a specific medical opinion on functional capacity, nor must there be specific affirmative medical evidence on the record as to each mental RFC finding). The court believes there is substantial evidence in support of the RFC in the medical records, medical opinions, and activities of daily living set forth in the administrative record. It is not a legal error if the RFC differs in some respect from Dr. Berg's opinion.

15

Second, the court finds that the ALJ did incorporate the restrictions discussed in Dr. Berg's report when in the RFC the ALJ limited plaintiff to "occasional interaction with co-workers," "no interaction with the general public," and "supervision on a basic level." This finding is supported by the results in the following cases. In Smith v. Colvin, 821 F.3d 1264, 1269 (10th Cir. 2016), the court found that the functional impact of numerous moderate mental limitations was sufficiently accounted for in an RFC limiting the claimant to no face-to-face public contact and only simple, repetitive, and routine tasks. The moderate limitations contained in a doctor's evaluation included the areas of accepting instructions and criticisms by supervisors, getting along with coworkers or peers, working with others without getting distracted, and completing a normal workday without interruption for psychologically based symptoms. The court in Smith cited Lee v. Colvin, 631 Fed.Appx. 538 (10th Cir. 2015) for support. In Lee, a psychologist assessed moderate limitations in various areas including responding appropriately to supervisors' criticisms and getting along with coworkers. The court held the limitations were adequately incorporated in an RFC limiting the claimant to simple tasks or work requiring only routine supervision or only

superficial interaction with supervisors or peers.[3] Id. at 541-42.

The court also draws support from: Carver v. Colvin, 600 Fed.Appx. 616, 619-20 (10th Cir. 2015)(RFC limiting claimant to jobs with simple instructions and interacting with co-workers and supervisors under "routine supervision" adequately incorporates doctor's finding that claimant could "relate to supervisors and peers on a superficial work basis"); and Ganer v. Berryhill, 2017 WL 3610537 *6 (D.N.M. 2/23/2017)(RFC limiting plaintiff to "occasional" interaction with supervisors and co-workers sufficiently incorporates doctor's conclusion that claimant can interact appropriately with coworkers and supervisors on an "incidental basis").

Plaintiff also contends that the alleged error in incorporating Dr. Berg's opinion in the RFC formulation is not harmless because the vocational expert testified that there would be no work available for plaintiff given the limits suggested by Dr. Berg's report. Again, the court disagrees.

The ALJ asked the vocational expert two similar questions. First, he asked:

> Assume we have an individual of the same age, educational background of claimant with the same work history. The first hypothetical, assume you have no exertional limitations, but he'd have non-exertional limitations

---

[3] The court acknowledges that in Lee the RFC assessment did incorporate language directly from the psychologist's narrative explanation of the plaintiff's functional capacity in a work setting.

> that limit him to simple, routine, repetitive tasks with occasional interaction with coworkers, no interaction with the general public. For this purpose, assume that he could accept supervision on a basic level. Can he return to his past work?

(Tr. 57). The expert answered this question "no." But, the expert identified three jobs which could be performed by such an individual. This answer supports the ALJ's finding that plaintiff could perform work present in substantial numbers in the economy.

The other similar question posed by the ALJ was:

> Now assume we have an individual with the same age, educational background of claimant with the same work history. Again, no exertional limitations. He'd be limited to simple, routine, repetitive tasks. However, this individual would be unable to consistently interact with coworkers, supervisors or the general public. He would be unable to maintain acceptable levels of punctuality and attendance, missing up to four days a month of work. Can he still do these jobs?

(Tr. 58). This question was answered "no" by the vocational expert. The court agrees with plaintiff that it is unclear whether the expert's answer is based upon the inability to interact consistently with supervisors and others, or the absenteeism and punctuality issue, or both. It is also noteworthy to the court that this question does not ask the expert to assume that the individual could accept supervision on a basic level.

While this part of the testimony is not clear, the answer to the first question provides sufficient evidence to support the ALJ's conclusions. Therefore, the court rejects plaintiff's second grounds to reverse the denial of benefits.

V. CONCLUSION

For the above-stated reasons, the court denies plaintiff's action to reverse defendant's decision refusing plaintiff's application for social security benefits.

**IT IS SO ORDERED.**

Dated this 11th day of March, 2019, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge